## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **MELVIN D. COSBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:06-00672** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) and the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 3 and 6.)

The Plaintiff, Melvin D. Cosby (hereinafter referred to as "Claimant"), filed an application for DIB on November 30, 2004, (protective filing date), alleging disability as of September 23, 2004, due to hypertension and congestive cardiomyopathy. (Tr. at 61, 62-64, 70-71.) The claim was denied initially and upon reconsideration. (Tr. at 28-30, 38-40.) On July 12, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 42.) The hearing was held on January 30, 2006, before the Honorable Steven A. DeMonbreum. (Tr. at 178-214.) By decision dated February 17, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-25.) The ALJ's decision became the final decision of the Commissioner on July 6, 2006, when the

Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On August 29, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffered from congestive cardiomyopathy and hypertension, which were severe impairments. (Tr. at 19.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant had a residual functional capacity for a range of light work with the following limitations:

> [T]he claimant could occasionally lift up to twenty pounds and frequently lift ten pounds; could stand/walk/sit up to six hours in an eight hour day; could occasionally climb ramps and stairs; could not climb ladders, ropes or scaffolds; could occasionally balance, kneel, crouch and crawl; and should avoid exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights.

(Tr. at 21.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 21-22.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a general office clerk, file clerk, shipping and receiving clerk, and inventory clerk, at the light level of exertion. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 23-25.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on May 20, 1955, and was 50 years old at the time of the administrative hearing. (Tr. at 18, 22, 62, 182.) Claimant had a high school education and completed vocational training in welding. (Tr. at 18, 75, 183-84.) In the past, he worked as a coal miner, shuttle car operator, scoop operator, and motorman. (Tr. at 18, 71, 85-87, 184-85, 202.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence

because the ALJ erred (1) in not finding Claimant disabled pursuant to GRID Rule § 201.14; (2) when he failed to give proper weight to the opinions of Claimant's treating physician, Dr. Sakib Najjar, M.D.; (3) in expressing his own medical opinion; (4) in assessing Claimant's residual functional capacity; and (5) in assessing Claimant's pain and credibility. (Pl.'s Br. at 4-13.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 9-17.)

1. Treating Source Opinions.

The Court first addresses Claimant's argument that the ALJ failed to evaluate properly the opinions of his treating physician, Dr. Najjar. (Pl.'s Br. at 6-7.) Claimant argues that the ALJ ignored Dr. Najjar's opinion by stating that he "did not express an opinion about work at a lesser level than his past work as a coal miner." (Pl.'s Br. at 6.) He asserts that "any fair reading of Dr. Najjar's report would lead one to conclude that Mr. Cosby was not able to work, and was at serious risk for sudden death if he did." (Id.) The Commissioner asserts that this argument is without merit.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a

detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given

to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The record indicates that Claimant was hospitalized on September 23, 2004, on complaints of chest and left arm pain. (Tr. at 119-41.) An echocardiogram performed that day revealed that Claimant had congestive cardiomyopathy, with a left ventricular ejection fraction ("LVEF") of 20%. (Tr. at 125.) On September 24, 2004, at the direction of Dr. Najjar, Claimant underwent an exercise stress myocardial perfusion scan with wall motion and ejection fraction studies and Spect Imaging. (Tr. at 123.) These tests revealed no evidence of exercise-induced ischemia, but indicated left ventricular dilatation, diffuse left ventricular hypokinesis, and LVEF of 23%, compatible with cardiomyopathy. (Id.) A Cardiolite Stress Test similarly indicated no evidence of ischemia, a severe early hypertensive response to exercise, and normal functional aerobic capacity. (Tr. at 121.) Dr. Najjar noted that Claimant achieved a maximum heart rate of 158, "which is 92% of age predicted heart rate maximum[,]" with "no additional ST-T changes and no chest pain during the stress test." (Tr. at 121.) Dr. Najjar discharged Claimant on September 27, 2004. (Tr. at 119.) Dr. Najjar opined

that Claimant had no ischemia and that his LVEF was 23%. (Id.) He noted that Claimant's Toprol XL was increased to 100 mg and that he added Norvasc 5 mg, which "controlled his blood pressure very well." (Id.) Although Claimant's blood pressure was slightly elevated with walking, Dr. Najjar noted that "at rest it is perfectly controlled." (Id.) Dr. Najjar therefore, decided to give Claimant more time. (Id.) Regarding Claimant's ability to work, Dr. Najjar opined that "his left ventricular ejection fraction has decreased so much that [it] is not going to be safe for him to work in the coal mines." (Id.) Dr. Najjar placed Claimant on sick leave for two weeks. (Id.)

Thereafter, Claimant sought treatment from Dr. Najjar from October 13, 2004, through November 21, 2005. (Tr. at 158-64, 165-66.) On October 13, 2004, Dr. Najjar noted that Claimant did well while hospitalized but advised Claimant that because his left ventricular ejection fraction was so low, he should stop working and apply for disability. (Tr. at 164.) Dr. Najjar continued his diagnoses of congestive cardiomyopathy and hypertension, which was well controlled, and instructed Claimant to continue the same medications. (Id.) On November 19, 2004, Claimant reported shortness of breath on exertion and simple walking. (Tr. at 163.) At that time, his blood pressure was elevated, although Dr. Najjar opined that it was well controlled and elevated due to his nephew's recent murder (Id.) On February 1, 2005, Claimant reported that he was doing well, with no chest pain or shortness of breath. (Tr. at 162.) A 2D Echocardiogram revealed that Claimant's LVEF was 40%, "which represents significant improvement compared to September 2004." (Tr. at 161.) Dr. Najjar again noted that Claimant's hypertension was well controlled. (Tr. at 162.) Three months later, on May 2, 2005, Claimant again reported that he was doing well and had no complaints of chest pain or shortness of breath. (Tr. at 160.) Dr. Najjar opined that Claimant's hypertension was "under excellent control." (Id.) He continued his same diagnoses and medications

and prescribed baby aspirin. (Id.) On August 8, 2005, Claimant reported some tightness in his chest but Dr. Najjar noted that the tightness resulted from social problems with his son. (Tr. at 166.)

In a letter to Claimant's attorney dated August 15, 2005, Dr. Najjar opined that Claimant was unable to perform his coal miner job, despite an increase in LVEF. (Tr. at 158-59.) Dr. Najjar stated:

> [Claimant] was hospitalized on September 23, 2004 at Bluefield Regional Medical Center for the evaluation of chest pain under my care. . . . During this hospitalization, I informed [Claimant] that treatment of his condition will include the use of ACE Inhibitors, Beta Blockers, and Aspirin. He does have a chance of improvement but at that time with a left ventricular ejection fraction of 20-23%, he could not go back to work in the coal mines. He was placed on sick leave and in the subsequent visits to the office that sick leave was extended and he was basically considered permanently and totally disabled.
>
> * * *
>
> At this time, I am extremely delighted that his ejection fraction almost doubled to 40%. Considering patient[']s job description as a coal miner, this left ventricular ejection fraction of 40% does not qualify him to go back to work. Going back to work will represent a hazard to his life because he might drop dead from ventricular fibrillation or go into Congestive Heart Failure. It also represents a hazard to the workers with him because he will not be able to do his share and protect his fellow worker when his health deteriorates suddenly.

(Id.) Regarding counsel's inquiry as to Claimant's ability to perform sedentary work, Dr. Najjar opined as follows:

> Could Mr. Cosby do sedentary type work, I'm always at a loss to answer that question because as an intelligent human being I assume that before you ask that question you have to qualify this patient for the sedentary work that you are suggesting and asking the question for the sake of assuming that he can do productive work is a dishonest way of trying to rob a man of his livelihood.
>
> I do not believe that Mr. Cosby can be returned to the coal mines to his usual job. The hazards of doing so are lethal because the most important risk in Congestive Cardiomyopathy is ventricular fibrillation and sudden death. The second risk would be Congestive Heart Failure and the fact that his ejection fraction improved from 20 to 40% does not preclude those two awful outcomes.

(Id.)

The ALJ summarized the medical evidence of record regarding Claimant's LVEF and Dr.

9

Najjar's opinions as set forth in his August 15, 2005, letter to Claimant's counsel. (Tr. at 19, 21.) He acknowledged Claimant's treatment with Dr. Najjar, a cardiologist, and found that he "clearly stated that the claimant was unable to return to his past work in the coal mines; however, did not offer an opinion regarding work at a lesser exertional level. He did not complete the functional capacity assessment presented by counsel." (Tr. at 21.) The ALJ noted that the only opinions of record regarding Claimant's RFC were submitted by the two State Agency Physicians, Dr. Gomez A. Rafael, M.D., and Rogelio T. Lim, M.D. (Tr. at 21, 142-49, 150-57.) The ALJ therefore concurred in their opinions and found that Claimant retained the residual functional capacity to perform a range of light work. (Tr. at 21.)

Claimant argues that despite not having completed the RFC assessment as requested by counsel, Dr. Najjar's "report would lead one to conclude that [Claimant] was not able to work, and was at a serious risk for sudden death if he did." (Pl.'s Br. at 6.) Despite any inferences that Claimant may draw from Dr. Najjar's opinion, the facts remain that Dr. Najjar specifically opined that Claimant could not perform his past relevant work as a coal miner and that he refused or failed to complete the residual functional capacity assessment as requested by Claimant's counsel. While Dr. Najjar opined that Claimant's increased LVEF of 40% "does not qualify him to go back to work," this opinion was made in consideration of his job description as a coal miner. Pursuant to Claimant's testimony and reports, the VE testified that Claimant's past relevant work consisted of that of a coal miner, performed at the very heavy exertional level; shuttle car operator, performed at the medium exertional level; scoop operator, performed at the medium exertional level; and motorman, performed at the light exertional level. (Tr. at 202.) The ALJ collectively classified these jobs as that of a coal miner and found that the exertional levels ranged from light to very heavy. (Tr. at 22.) Dr.

10

Najjar failed to complete the RFC assessment, and therefore, the ALJ was left to consider the only evidence in this regard, the opinions of the state agency physicians, as they were supported by the evidence. Thus, the Court finds that although it appears that Dr. Najjar opined that Claimant was disabled, his opinions were limited to Claimant's past relevant work as a coal miner. Accordingly, substantial evidence supports the ALJ's finding that Dr. Najjar "did not offer an opinion regarding work at a lesser exertional level."

2. <u>Pain and Credibility & RFC Assessment</u>.

Claimant next argues that the ALJ erred in assessing his credibility and RFC. (Pl.'s Br. at 9-12.) Specifically, Claimant asserts that pursuant to Dr. Najjar's advising that activity could lead to ventriclular fibrillation and sudden death, he lead a sedentary lifestyle. (<u>Id.</u> at 9, 11.) This sedentary lifestyle and self-limiting activity, Claimant asserts, is most likely the contributing factor to the subsiding of his symptoms of chest pain. (<u>Id.</u> at 11.) Claimant argues that his reported limited activities, including 30 minute walks with periods of rest due to shortness of breath, slower than usual walking pace, inability to lift, the need to avoid all stress, lightheadedness and dizziness, and having to lie down 30 minutes each day, were not refuted by the medical record. (Pl.'s Br. at 12.) Furthermore, Claimant asserts that the ALJ failed to explain his finding that his complaints are only partially credible. (<u>Id.</u>) He asserts that the ALJ assumed that because his LVEF had improved, his blood pressure was stable, and his chest pain had ceased, his complaints were incredible. (<u>Id.</u>) To this extent, Claimant argues that the ALJ improperly expressed his own medical opinion, which was an "inexpert assessment of the current severity of [Claimant's] condition, and a severe underestimate of the risk his condition poses to his life." (<u>Id.</u> at 8, 12.)

The Commissioner asserts that Claimant improperly is attempting to shift the burden of proof

to the Commissioner by suggesting that the ALJ should cite evidence that does not exist given his limited production of any evidence. (Def.'s Br. at 16.) Furthermore, the Commissioner argues that Claimant mistakenly is "under the impression that a medical determinable impairment and 'dire warnings' of limitations equates to and establishes, unequivocally, an inability to perform any work-related activities in the national economy." (Id. at 13.) The Commissioner states:

> That [Claimant] has a medically determinable impairment does not mean, as [Claimant] dramatically suggests, that a forty hour work week performing the light exertional level jobs identified by the vocational expert is a death sentence. The mere existence of a medically determinable impairment does not mean [Claimant] is medically precluded from any and all ranges of work, particularly since his 40% LVEF, his only undisputed limitation, is in the normal, albeit low normal, range.

(Id.) Consequently, the Commissioner asserts that Claimant's arguments in these regards are without merit and that substantial evidence supports the ALJ's credibility analysis. (Id.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged

12

functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R.

§§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (I) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186

(July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility

assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of

the symptoms on a claimant's ability to function along with the objective medical and other

evidence in determining whether the claimant's impairment is "severe" within the meaning of the

regulations. A "severe" impairment is one which  significantly limits the physical or mental ability

to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

14

The RFC determination is an issue reserved to the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. <u>See</u> 20 C.F.R. § 404.1527(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." <u>Id.</u> § 404.1527(b).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 19-21.) Having resolved all doubts in Claimant's favor, the ALJ acknowledged, with regard to the threshold test, that Claimant's "allegations are partially credible, in that it is reasonable to assume that his cardiac impairment would impose some limitations." (Tr. at 20.) Regarding the second step, the ALJ considered the intensity and persistence of Claimant's alleged symptoms and complaints of pain, and the extent to which they affected his ability to work. (Tr. at 19-21.) The ALJ concluded that the extent of Claimant's complaints was not totally credible. (Tr. at 20-21.)

In considering the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), the ALJ noted Claimant's complaints of difficulty with stress, lifting, and walking. (Tr. at 20.) He also noted that Claimant's daily and other activities included sitting or lying down watching television, taking short walks, shopping, going to church, driving, playing cards, and handling finances. (<u>Id.</u>) He specifically noted that Claimant did not perform any household chores or yard work. (<u>Id.</u>) Regarding

15

Claimant's alleged medication side effect of drowsiness, the ALJ found that the objective evidence did not support such effect and that Claimant did not report any side effects to his treating physician. (Tr. at 21.) The ALJ further noted that Claimant was capable of driving prior to losing his vehicle. (Id.)

Despite Claimant's complaints, the ALJ noted that the medical evidence demonstrated that Claimant's condition improved since his September, 2004, LVEF of 20%. Particularly, the ALJ noted the Physical Residual Functional Capacity Assessment of Gomez A. Rafael, M.D., a state agency physician, dated February 25, 2005. (Tr. at 21, 142-49.) Dr. Gomez opined that Claimant was capable of performing light level work provided that he performs postural activities only occasionally and that he avoids concentrated exposure to temperature extremes, hazards, and fumes, odors, dusts, gases, and poor ventilation. (Tr. at 143-46.) In his assessment, Dr. Gomez specifically noted that Claimant's LVEF increased from 20% in September, 2004, to 40% on February 1, 2005. (Tr. at 147.) Dr. Gomez opined that while Claimant may have been disabled in September, 2004, "at present his condition has improved to the point that he should [be] able to do light work." (Id.)

The ALJ further considered the June 24, 2005, opinion of Rogelio T. Lim, M.D., another state agency physician, who likewise opined that Claimant was capable of performing light level work with postural and environmental limitations. (Tr. at 21, 150-57.) Dr. Lim noted Claimant's increased LVEF, as well as his performance during a stress test, which demonstrated that Claimant achieved stage four or ten mets negative. (Tr. at 155.) Dr. Lim stated: "If [Claimant] can perform at high level of exercise of 10 mets or stage 4 he can at least do full range of light work." (Id.) He further considered Dr. Najjar's opinion that Claimant's LVEF had decreased to the point that it was unsafe for him to work in the coal mines. (Tr. at 156.) Dr. Lim however, again noted Claimant's performance during the stress test, which was unaccompanied by shortness of breath, chest pain, or

any musculoskeletal symptoms, and found Dr. Najjar's opinion to be not "fully credible." (Id.)

The ALJ noted that the treatment notes subsequent to Dr. Gomez's and Dr. Lim's assessments reflected essentially normal exams. (Tr. at 21.) On November 21, 2005, Claimant reported that he was doing fairly well, without symptoms of chest pain or shortness of breath. (Tr. at 165.) On examination, his lungs were clear to auscultation and his heart sounds were normal. (Id.)

Although Claimant asserts that his symptoms of chest pain and shortness of breath most likely subsided due to his self-limiting activity, the record does not support Claimant's strict limitations. Consistent with the treatment notes of record, the state agency physicians opined that Claimant was capable of performing light level work. More importantly, his treating cardiologist opined that he was restricted from only returning to his past relevant work. As discussed above, this restriction was based on the nature of Claimant's job description in the coal mines. The record demonstrates that Claimant's treating cardiologist encouraged Claimant to exercise. As the ALJ noted, Claimant's treating cardiologist's opinion did not preclude him from performing light level work. Accordingly, the ALJ's decision to accept the state agency physicians' opinions is supported by substantial evidence of record. The Court further notes that the ALJ did not assert his inexpert opinion in noting that Claimant's LVEF had improved, as both state agency physicians noted the same in their assessments.

Based on the foregoing, the undersigned finds that Claimant's alleged symptoms and pain and the limitations therefrom are not supported by the objective medical evidence of record. Although Claimant repeatedly complained of an inability to perform essentially any activity, the medical record does not contain objective evidence that corroborates the extent of his alleged limitations. The ALJ credited Claimant's subjective complaints to the extent that he is capable of performing a significant range of light work, with limitations on postural and environmental

17

activities, including occasional climbing ramps and stairs, balancing, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights. (Tr. at 21.) Based on the VE's testimony, the ALJ also limited Claimant to performing jobs at the light exertional level which were not considered particularly stressful, i.e., general office clerk, shipping and receiving clerk, and inventory clerk. (Tr. at 23.)

The Court further finds unavailing Claimant's argument that the ALJ impermissibly interfered with the VE's testimony by prohibiting him from testifying to sedentary jobs. (Pl.'s Br. at 9-10.) The ALJ properly determined that Claimant's RFC permitted him to perform work at the light exertional level. (Tr. at 21.) The ALJ, therefore, properly limited his hypothetical questions posed to the VE to light level work. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). In his hypothetical questions to the VE, the ALJ included all of Claimant's impairments that were supported by the record. Accordingly, the Court finds that the ALJ properly inquired of the VE as to Claimant's ability to perform light level work,

and therefore, Claimant's argument is without merit.

Upon a careful review of the record, the undersigned finds that the ALJ's determination that Claimant's statements respecting his pain/symptoms were not totally credible is supported by substantial evidence. The ALJ's analysis of Claimant's pain and credibility was proper and in accordance with the applicable law and Regulations. The evidence of record indicates, as the ALJ found, that Claimant's allegations of pain and other symptoms are not as debilitating as he contends. (Tr. at 19-21.) The ALJ found that Claimant could perform light work with specific limitations which accommodate Claimant's symptoms and complaints of pain. (Tr. at 21.) Therefore, the ALJ took into account most of Claimant's symptoms in assessing his residual functional capacity. The ALJ's determination of Claimant's pain and credibility is supported by substantial evidence and Claimant's argument is without merit.

3. Grids.

Finally, Claimant argues that the ALJ erred in not finding that Claimant was disabled pursuant to Medical-Vocational Rule 201.14 of the Medical-Vocational Guidelines ("the grids"). (Pl.'s Br. at 5-6.) At the fifth stage in the sequential evaluation process, after the Claimant has made a prima facie showing of a disability that prevents him from engaging in his prior work activity, the burden shifts to the Commissioner, who must show that the Claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, which job exists in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002); Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976). To answer this inquiry, the Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional

19

capacity." <u>Grant</u>, 699 F.2d at 191-92; <u>see generally</u> 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2002). Each grid considers only the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. <u>Grant</u>, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2002). The grid rules reflect the number of unskilled jobs at the various exertional levels. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b) (2004) ("[t]he existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels."). "Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." <u>Id.</u>

Rule 201.14 provides that an individual closely approaching advanced age (age 50-54), with a high school education or more but allowing no direct entry into skilled work, whose previous work experience was skilled or semiskilled - not transferable, and who is capable of performing sedentary work, is deemed disabled. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14 (2004). As already determined, the ALJ properly assessed Claimant's RFC for light exertional work. Rule 201.14 therefore, is inapplicable. Rather, Rules 202.14 and 202.21, as noted by the ALJ as a framework for his decision, provide the more appropriate grid under which Claimant's abilities are assessed. Rule 202.14 provides that an individual closely approaching advanced age, with a high school education or more, with skilled or semiskilled past work experience, skills not transferable, and who is capable of performing light work, is not disabled. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.14 (2004). Similarly Rule 202.21 provides that a younger individual (age 18-44), with a high school education or more, whose previous work experience was skilled or semiskilled - not transferable, and who is capable of performing light work, is not disabled. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.21

20

(2004). Accordingly, the undersigned finds that the ALJ's reliance on these Rules as a framework for his decision is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 27, 2007.

R. Clarke VanDervort
United States Magistrate Judge

21